IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                   CRIMINAL ACTION NO. 2:09-cr-00222-01

DAVID KEITH BARBEITO,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant David Barbeito's Appeal of and Motion for De Novo Review of the Magistrate's Ruling to Revoke Bond Issued by the District of Maryland [Docket 765].

Defendant appeared before Magistrate Judge Susan K. Gauvey of the District of Maryland on October 8, 2009, for a detention hearing. Magistrate Judge Gauvey ordered that Defendant be released on bond pending trial. That same day, the Government filed a motion with this Court seeking review of the order releasing Defendant on bond in accordance with 18 U.S.C. § 3145(a). The Court referred the motion to Magistrate Judge Mary E. Stanley for disposition pursuant to 28 U.S.C. § 636(b)(1). Magistrate Judge Stanley held a detention hearing on October 15, 2009, at the conclusion of which she ordered that Defendant be detained pending trial. Defendant now brings this appeal seeking a de novo review of Magistrate Stanley's order on the grounds that the Government has not demonstrated by clear and convincing evidence that Defendant's release would pose a danger to any person or the community.

## I. STANDARD OF REVIEW

There is some confusion among the parties as to whether this matter is before the Court by operation of 28 U.S.C. § 636(b)(1)(A) or 18 U.S.C. § 3145(b). The Government's § 3145(a) motion concerned a nondispositive pretrial matter and was referred to Magistrate Judge Stanley pursuant to 28 U.S.C. § 636(b)(1)(A). This Court typically would review the magistrate judge's disposition of the referred nondispositive motion under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a). In this case, however, the referred motion was disposed of by the entry of a detention order by the magistrate judge. 18 U.S.C. § 3145(b) addresses the procedure for reviewing detention orders. It provides, in pertinent part: "If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." Motions for review of detention orders under § 3145(b) warrant a de novo review by the district court. *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989); *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985). The question, therefore, is one of characterization: Is the Court reviewing the magistrate judge's determination of the Government's referred § 3145(a) motion under § 636(b)(1)(A)? Or is the Court reviewing the magistrate judge's detention order under § 3145(b)? Mindful that Defendant's liberty is at stake, the Court will err on the side of caution by applying a de novo standard of review under § 3145(b).[1]

The Bail Reform Act provides that a defendant shall be detained only if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the

---

[1] For similar reasons, the Court will decline the Government's invitation to summarily dismiss Defendant's motion as untimely.

2

defendant as required or the safety of any other person and the community. 18 U.S.C. § 3142(e). When a party seeks review of a magistrate judge's order releasing or detaining a defendant, the Court must conduct a de novo review of the record and of the proceedings before the magistrate judge, but it need not hold a second detention hearing. *Cf. United States v. Toler*, 684 F. Supp. 436, 437 (S.D. W. Va. 1988) (Haden, C.J.). The Court's decision is guided by the factors set forth in 18 U.S.C. § 3142(g). These factors are (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person" including, among other factors, family ties, employment, financial resources, past conduct, criminal history, and whether the person was on release pending trial; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In order to obtain a detention order, the Government must demonstrate either (1) by clear and convincing evidence that "no conditions other than detention will reasonably assure the safety of any other person and the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (citing 18 U.S.C. § 3142(f)(2)); or (2) by a preponderance of the evidence that detention is necessary to reasonably assure the appearance of the defendant at future court proceedings, *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).[2]

## II. DISCUSSION

The Government's position is that there are no conditions or combination of conditions other than detention that would reasonably assure the safety of any other person or the community. There have been no representations that there is a risk of Defendant's nonappearance. Accordingly, the

---

[2] Under some circumstances, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the defendant's appearance or the safety of the community. *See* 18 U.S.C. § 3142(e). This presumption does not apply to Defendant in this case.

Government's burden is to demonstrate by clear and convincing evidence that Defendant's release poses a risk to the safety of others and the community. The Court reviews the Government's proffered evidence and arguments in light of the factors set forth in 18 U.S.C. § 3142(g).

  *A.*  *Nature and Circumstances of the Offense Charged*

Defendant is named in five counts of a forty-four-count Indictment lodged against various members and associates of the Pagan's Motorcycle Club (PMC). Counts One and Two charge Defendant with racketeering and conspiracy to commit racketeering in violation of 18 U.S.C. §§ 1962(c) and (d), respectively. Counts Eight, Nine, and Twelve charge him with aiding and abetting the offense of interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. §§ 2 and 1952(a)(1). Defendant faces maximum terms of imprisonment of twenty years on Counts One and Two and five years on Counts Eight, Nine, and Twelve.

Counts One and Two the Indictment allege that the PMC is a national criminal enterprise engaged in, among other things, extortion, robbery, and illegal gambling schemes. The enterprise's purpose is to enrich its members and to preserve its power throughout its territory. As national president of the PMC for the past twenty years, Defendant allegedly exercised, and would presumably continue to exercise, authority over all PMC members and the organization's so-called support clubs. The support clubs are motorcycle clubs within the PMC's territory which were used to recruit new members and facilitate the PMC's racketeering activities.

Counts One and Two of the Indictment outline numerous racketeering acts allegedly engaged in by the PMC, including conspiracy to commit murder, retaliation against a witness, kidnaping, robbery, extortion, obstruction of justice, and gambling. Defendant is directly implicated in the operation of the illegal gambling operations which apparently earned more than $50,000 annually

for the PMC. More troubling, however, is Defendant's alleged participation in a violent kidnaping episode. According to evidence proffered by the Government, Defendant and other PMC members traveled to South Charleston, West Virginia, to address a problem among members of the local chapter. On Defendant's orders, a PMC member guarded the local members with a shotgun to prevent them from leaving the premises while Defendant and others interrogated the members individually.

The charged conduct, if true, would indicates that Defendant has the capacity and willingness to use violence and threats of violence against others. Furthermore, the racketeering offenses with which Defendant is charged involve the potential use of deadly force against persons believed to be cooperating with the government. Although Defendant is not expressly named as a participant in the conspiracies to commit murder described in Counts One and Two, evidence presented by the Government regarding Defendant's role atop the PMC hierarchy suggests that these conspiracies occurred with the acquiescence, if not approval, of Defendant. This fact is particularly concerning because the identities of persons who have cooperated with the government during the investigation of this case, or who may become witnesses against defendants, are likely to become known to the defendants as this case progresses. Thus, the nature and circumstances of the offenses charged indicate that Defendant poses a risk to others and the community—specifically, any persons who have cooperated or will cooperate with the authorities in connection with this case.

  B.  *Weight of the Evidence*

The Government has proffered substantial evidence linking Defendant to the offenses charged in the Indictment. *Cf. United States v. Smith,* 79 F.3d 1208, 1210 (D.C. Cir. 1996) (holding that the government may proceed by way of proffer at detention hearings); *United States v.*

*Chappelle*, 51 F. Supp. 2d 703, 706 (E.D. Va. 1999) (same). With regard to Counts Eight, Nine, and Twelve, the Government has provided documents maintained by Defendant which account for the monies received from PMC chapters. A stipulation of facts executed by co-defendant, Floyd Moore, who was the PMC national vice president, outlines Defendant's alleged involvement in the illegal gambling operation. Moore's stipulation also reinforces the Government's contention that the PMC engages in acts of violence and intimidation and that Defendant exercised control over the PMC's activities. The Government has proffered a summary of an interview with a cooperating individual who participated in the kidnaping incident for which Defendant is charged. The Government also has produced a recording of Defendant and others in which the PMC is contrasted with its rival, the Hell's Angels Motorcycle Club. Unlike the Hell's Angels, according the speakers on the recording, the members of PMC act in concert and with the full knowledge of the club's leadership, namely, Defendant and vice president Moore.

### C.   *History and Characteristics of Defendant*

Defendant argues that aspects of his history and characteristics establish that he does not pose a danger to others. Defendant has little criminal history and is gainfully employed. He has demonstrated family support and ties to his community. These aspects of his background suggest that he is not likely to personally engage in acts of violence against others.

The nature of the threat Defendant potentially poses to others is not predicated on his capacity for violent acts, however. Defendant has acknowledged that he is the president of the PMC. The PMC is structured hierarchically, with Defendant at the top. From this position, it is alleged that he is able to direct the actions of subordinate members of the PMC and its support clubs. The PMC is an organization alleged in the Indictment to be engaged in significant racketeering activities, many

of which involved intimidation and violence. Further, the Government has proffered news reports reflecting that the PMC has been involved in numerous violent incidents not charged in the present Indictment during Defendant's tenure as president. More specifically, the reports detail violent, and occasionally deadly, clashes between the PMC and members of the Hell's Angels Motorcycle Club which have occurred during the past eight years. These violent episodes, when they are viewed in light of Defendant's alleged statements that the PMC does not act without his knowledge, are indicative of his capacity to endanger others. Thus, although Defendant may not have a history of being a dangerous person personally, he has the ability to endanger others through his position as the president of the PMC. *Cf. United States v. Defede*, 7 F. Supp. 2d 390, 395 (S.D.N.Y. 1998) (holding that through the defendant's position as the head of a criminal organization, his release presented a danger to the community).

The Government also highlights the numerous firearms and ballistic vests found during a search of Defendant's home. Defendant responds that the firearms and vests were used for hunting. Citing *United States v. Jeffries*, 679 F. Supp. 1114, 1118 (M.D. Ga. 1988), Defendant further argues that possession of a firearm, without more, does not constitute clear and convincing evidence of dangerousness. Defendant's assertion is legally correct, but off the mark. Two of the firearms seized at Defendant's home were unlawful, namely, a handgun with an obliterated serial number and an unregistered shotgun. The shotgun is a short-barreled, high capacity, semi-automatic weapon with a folding stock commonly known as a "street sweeper." Possession of these firearms, if proven, would constitute violations of 26 U.S.C. § 5861. Thus, although Defendant's alleged possession of two illegal firearms does not constitute clear and convincing evidence of his dangerousness, it does add to the quantum of evidence in support the Government's position.

### D. *Nature and Seriousness of Danger to Others*

The offense conduct charged in Counts One and Two of the Indictment include multiple acts of violence and intimidation, including acts of violence against persons believed to be cooperating with government authorities. The unsealing of the Indictment in this case potentially exposes a number of persons within the PMC as government informants. Furthermore, the class of persons who may be targeted for their real or perceived cooperation with the government grows with each plea agreement that is filed with the Court.

### III. CONCLUSION

After reviewing de novo the detention order pursuant to 18 U.S.C. § 3145(b), and for the reasons discussed above, the Court **FINDS** by clear and convincing evidence that no condition or combination of conditions could protect the safety of other persons and the community. The potential for Defendant to organize and direct members of the PMC to commit acts of violence is greatly curtailed if he is in custody. Accordingly, the Court **AFFIRMS** Magistrate Judge Stanley's Detention Order and **ORDERS** that Defendant remain in the custody of the United States Marshal pending trial.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: January 11, 2010

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE